# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **IN RE:** ) | **CHAPTER 13** |
| ) | |
| **ROSE MOSES WOODFORD** ) | **Case No. 18-71300** |
| ) | |
| Debtor. ) | |
| ) | |
| **ROSE MOSES WOODFORD** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **A.P. No. 19-07003** |
| v. ) | |
| ) | |
| **CAPITAL BANK, NA** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On September 28, 2018, Rose Moses Woodford (the "Debtor") filed a voluntary Chapter 13 bankruptcy petition in this Court. After the Court denied confirmation of her first Chapter 13 Plan, the Debtor initiated this adversary proceeding on January 21, 2019. In her complaint, the Debtor claims that Capital Bank, NA (the "Bank") required Sherwood D. Woodford, the Debtor's then husband, to execute a Deed of Trust ("DOT") on the Woodfords' principal residence (the "Property") in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, and that any lien claimed by the Bank is therefore void.[1] The Bank filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In support, the Bank argues that the ECOA does not apply in

---

[1] Mr. Woodford is now deceased. As described at oral argument, the Debtor resides in the residence upon which the deed of trust was delivered in the transaction at issue. The Debtor is the beneficiary of a trust which now owns the property. How the Chapter 13 plan in this case must approach the Debtor's principal residence and the debt against it are central questions to be resolved in connection with confirmation of her Chapter 13 case.

this situation or, alternatively, that the lien on the Property falls into an exception within the ECOA. The Court held a hearing on this matter on April 8, 2019 at which the Debtor and Capital Bank, NA appeared.

## **BACKGROUND[2]**

The lien at issue arose from a promissory note (the "Note") executed and delivered to the Bank on April 8, 2011 on behalf of Walker International Incorporated ("Walker International") in exchange for a loan to be used in the company's operation. (ECF No. 1, ¶¶ 5, 10.) Although the Debtor alleges that her daughter and son-in-law had exclusive control over the operations of Walker International, she nonetheless served as the company's president and executed the Note on behalf of the company. (*Id.* ¶ 8.) Contemporaneously with the execution of the Note, the Debtor executed a commercial guaranty for the benefit of the Bank. (*Id.* ¶ 6.)

The Debtor suggests that the Note and guaranty resulted from an "informal" application for credit on behalf of Walker International. (*Id.* ¶ 9.) Rather than preparing a formal credit application, the Bank's loan officer simply relied on information that had been prepared for another lender and concluded that the Bank would extend credit to Walker International secured by a lien against only the company's inventory. (*Id.*) At signing, the Bank nonetheless required the Debtor and Mr. Woodford to execute and deliver a DOT granting a lien in favor of the Bank in the Property.[3] (*Id.* ¶ 12.) According to the complaint, it did so "without making any inquiry as to the Debtor's individual creditworthiness" and, as a result, the Debtor asserts that the Bank violated the anti-discrimination provisions of the ECOA. (*Id.* ¶ 26.)

---

[2] Because a Rule 12(b)(6) motion to dismiss requires the Court to take the facts alleged in the complaint as true, the facts provided below are taken from the Debtor's complaint unless otherwise noted.

[3] Later filings indicate that the Property in fact belonged only to Mr. Woodford and that the Debtor had no interest in the Property. (ECF No. 4-5.)

In response, the Bank suggests that the ECOA does not apply to the Debtor and that the statute contains exceptions for this situation. (ECF No. 4, at 1.) Even accepting the Debtor's allegations as true, the Bank argues that Debtor has failed to state a claim for which relief may be granted.

## **CONCLUSIONS OF LAW**

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K) and (O).

### I.     **The Applicable Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Meeting this standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' the plaintiff has stated a claim entitling him to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Such factual allegations "must be enough to raise a right to relief above the speculative level." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009). In considering 12(b)(6) motions, the Court shall "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff," *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); but, it "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi*, 562

3

F.3d at 616 n.26 (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

## II.      Application of the ECOA

As the Fourth Circuit stated in *Capitol Indemnity Corp. v. Aulakh*,

> [t]he animating principle of the ECOA . . . is to prevent discrimination against those applying for credit. As such, [it contains] broad anti-discrimination provisions that "make it unlawful for any creditor to discriminate against any applicant with respect to any credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1) . . . . In explicitly identifying "sex or marital status" as one of the prohibited bases for discrimination in credit transactions, legislatures sought to eradicate credit discrimination against women, particularly married women with whom creditors traditionally had refused to deal. *See Markham v. Colonial Mortgage Service Co.*, 605 F.2d 566, 569 (D.C. Cir. 1979) (stating that "one, perhaps even the main, purpose of the [ECOA] was to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider apart from their husbands as individually worthy of credit"); *see also Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 374 (4th Cir. 1994). Regulations implementing the ECOA offer explicit guidance in this respect. *See* 12 C.F.R. § 202.7(d)(1) (2002) ("Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse . . . on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.").

313 F.3d 200, 202 (4th Cir. 2002).

A plaintiff may show discrimination by asserting a violation of a specific provision of the statute or the accompanying regulations. *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). For example, the Ninth Circuit explained in *Anderson*,

> Regulation 202.7(d)(1) is a specific rule created by the Federal Reserve Board which is totally consistent with the purpose of the Act. The rationale behind § 202.7(d)(1) is to insure that individual credit is, in reality, available to any credit-worthy married applicant. . . . If the spouse were required to sign the credit instrument, the credit offered would be joint, not individual credit, and this would be discrimination on the basis of marital status.

*Id*. The court continued to state that "a clear violation of this regulation should indeed be discrimination within the meaning of the Act." *Id.*

Coincidentally, 12 C.F.R. § 202.7(d)(1), cited above, and the exceptions thereto form the basis of the dispute here.   Thus, to state a claim for a violation of § 202.7(d)(1), the Debtor must allege facts which, taken as true, establish that (1) she was an "applicant"; (2) the Bank did not determine she was uncreditworthy; and (3) the Bank nonetheless required her husband to sign a "credit instrument."   *Id.* § 202.7(d)(1).   In its defense, a creditor may then point to one of several exceptions to this rule, including § 202.7(d)(4) which allows a creditor to obtain a spouse's signature as necessary to create a valid lien in property offered as collateral.

As stated above, the Debtor argues that the Bank violated the ECOA by requiring her husband to execute a DOT as collateral securing the loan for which she applied on behalf of Walker International, and for which the Bank never made a determination that the Debtor or Walker International were not independently creditworthy.   Accordingly, she asks the Court to invalidate the lien created by the DOT.

In response, the Bank asserts that § 202.7(d)(1) does not apply because the Debtor, as guarantor of the loan, was not an "applicant" for the purposes of the ECOA, and that the Bank never required Mr. Woodford to sign a "credit instrument" as prohibited by the regulation. Alternatively, the Bank argues that it merely required Mr. Woodford to execute an instrument to create a valid interest in collateral as allowed by § 202.7(d)(4).   *See* 12 C.F.R. § 202.7(d)(4) ("[A] creditor may require the signature of the applicant's spouse or other person on any instrument necessary . . . to make the property being offered as security available to satisfy the debt in the event of default, for example, an instrument to create a valid lien . . . ."); *see also Ballard v. Bank of Am., N.A.*, 734 F.3d 308, 210–11 (4th Cir. 2013) (outlining exceptions to § 202.7(d)(1)'s restriction).   Because the Court agrees that the Bank never required Mr.

5

Woodford to sign a "credit instrument," it will dismiss the Debtor's adversary proceeding for failure to state a claim for which relief can be granted.

Although neither the ECOA nor the regulations implementing it define a "credit instrument," several courts have equated the term with instruments creating personal repayment obligations, rather than DOTs or similar documents.  For example, in *Evans v. Centralfed Mortgage Co.*, 812 F.2d 348, 349 (5th Cir. 1987), the plaintiff, a married woman, sought to purchase residential property with her daughter without including her husband in the transaction. The lender, Centralfed, "required the name of the spouse of any married borrower to appear in the warranty deed reflecting ownership of the property and for the spouse to sign the deed of trust conveying a security interest in the property."  *Id.* at 348–49.  Although "Centralfed acknowledged that Evans' husband would not be a borrower in the transaction, would not be required to sign the Note, and would not be personally obligated to repay the loan obligation," the lender nonetheless required his signature on the DOT.  *Id.* at 349.

> Holding that Centralfed did not violate the ECOA, the Fifth Circuit found that
>
> Centralfed's signature-of-spouse requirement is not prohibited discrimination. Centralfed did not require the non-borrowing spouse's signature "on any credit instrument" under § 202.7(d). . . . [I]t appears that the intent of this regulation is to remedy or prevent instances where a credit decision is based on an impermissible ground, such as marital status.  Evans' husband was not required to sign a "credit instrument" such as a promissory note or to assume a personal obligation for the debt.

*Id.* at 350.

The Court finds further support for this interpretation in the definition of "credit" in § 1691a(d), which means "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment

therefor." 15 U.S.C. § 1691a(d). Because execution of a DOT does not create a right to incur debt or defer payment, such a document is not a "credit instrument." *See also Mick's at Pennsylvania Ave., Inc. v. BOD, Inc.*, 389 F.3d 1284, 1289 (D.C.C. 2004) (suggesting that a sublease was not a "credit instrument" as it did not create a credit right).

*Evans* is persuasive here, and the Debtor has not pointed to any authority or legal theory to convince the Court otherwise.[4] She merely urges the Court to accept that a DOT like the one her husband signed constitutes a "credit instrument" for the purpose of the ECOA. As in *Evans*, however, the Debtor's husband was not the borrower, the Bank did not require him to sign the Note, and he shared no personal responsibility for repayment of the underlying obligation. The Bank's extension of credit was not "joint" based on the DOT, nor did Mr. Woodford obtain any right to credit or deferred payment. Rather than creating a personal obligation, the DOT created merely an *in rem* obligation in Mr. Woodford's real property. Accordingly, the Debtor has failed to state a claim under § 202.7(d)(1) and the Court need not consider whether the exception of § 202.7(d)(4) applies.[5]

---

[4] The Debtor attempts to distinguish *Evans* by suggesting that she never offered the Property at issue here as security for the loan, and that the Bank instead requested such as collateral. (ECF No. 10.) This argument attacks the exception found in 12 C.F.R. § 202.7(d)(4) and *Evans*' reasoning as to whether the lender in that case could require an applicant's spouse to sign a DOT. Section 202.7(d)(4) allows a creditor to "require the signature of the applicant's spouse or other person on any instrument necessary . . . to make *the property being offered as security* available to satisfy the debt in the event of default." Thus, the Debtor argues that she never offered the Property such that the exception does not apply. However, because the Court finds that a DOT is not a "credit instrument" for the purposes of § 202.7(d)(1), it need not consider whether the DOT falls into the exception of § 202.7(d)(4). Consequently, the assertion that the Debtor never "offered" the Property as collateral is of no moment here. The Court also need not reach the issue as to whether the Debtor has standing, as the trustee of the trust currently owning the real estate is not a party to this litigation.

[5] The Court also questions whether the Debtor, as guarantor of the loan to Walker International, is an "applicant" under the ECOA. However, because the Court finds that the DOT executed by Mr. Woodford is not a "credit instrument," it will decline to insert itself into the ongoing debate over this issue discussed in *Hawkins v. Community Bank of Raymore*, 761 F.3d 937 (8th Cir. 2014) *aff'd by an equally divided Court*, 136 S. Ct. 1072 (2016), *RL BB Acquisition, LLC v. Bridgemill Commons Development Group, LLC*, 754 F.3d 380 (6th Cir. 2014), *Ballard v. Bank of America, N.A.*, 734 F.3d 308 (4th Cir. 2013), *Moran Foods, Inc. v. Mid-Atlantic Market Development Co., LLC*, 476 F.3d 436 (7th Cir. 2007), and more recently in *Regions Bank v. Legal Outsource PA*, No. 2:14-cv-476-FtM-29MRM, 2016 WL 4014875 (M.D. Fla. July 27, 2016), currently on appeal to the Eleventh Circuit.

CONCLUSION

The Court finds that the Bank did not violate the ECOA by requiring the Debtor's husband to execute a DOT as collateral for the loan to Walker International.   Although the regulations implementing the ECOA prohibit creditors from requiring a spouse's signature on a "credit instrument," that term does not include DOTs like the one in this case.   Her Complaint is hereby dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

A separate Order will be entered contemporaneously herewith.

Decided this 1st day of May, 2019.

_____
UNITED STATES BANKRUPTCY JUDGE